02-08-301-CR
















 

 

 

 

COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT
WORTH

 

NO. 2-08-301-CR

 

 


 
 
 PATRICK EUGENE SANDERS
 
 
 APPELLANT
 
 


 

V.

 


 
 
 THE STATE OF TEXAS
 
 
 
 
 STATE
 
 


 

------------

 

FROM THE 372ND
DISTRICT COURT OF TARRANT
COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

          A jury convicted Appellant Patrick
Eugene Sanders of burglary of a building and assessed his punishment at
seventeen years’ confinement.  The trial
court sentenced him accordingly.  On
appeal, Appellant contends in seven issues that the evidence is legally and
factually insufficient to support his conviction and that the trial court erred
by refusing to hold a hearing on his motion for new trial.  Because we hold that the evidence is legally
and factually sufficient to support his conviction and because the trial court
has now held a hearing on Appellant’s motion for new trial, we affirm the trial
court’s judgment.

Legal Sufficiency of the Evidence

          The indictment charges that Appellant
“did then and there intentionally, without the effective consent of Grady
Anderson, the owner thereof, enter a building not then and there open to the
public with intent to commit theft” and, in Paragraph Two, that he “did then
and there intentionally or knowingly, without the effective consent of Grady
Anderson, the owner thereof, enter a building and did attempt to commit or
commit theft.”[2]

In
his first three issues, Appellant contends that the evidence is legally
insufficient to prove intent to commit theft, attempt to commit theft, and a
completed theft; that is, he contends that the State failed to prove burglary
under any of the three theories.  In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.[3]

In
determining the legal sufficiency of the evidence to show an appellant=s
intent, and faced with a record that supports conflicting inferences, we Amust
presumeCeven
if it does not affirmatively appear in the recordCthat
the trier of fact resolved any such conflict in favor of the prosecution, and [we]
must defer to that resolution.@[4]  A person commits attempt if “with specific
intent to commit an offense, he does an act amounting to more than mere
preparation that tends but fails to effect the commission of the offense
intended.”[5]

Officer
Kaare G. Martin testified that about 4:50 a.m. on January 14, 2008, he received
a burglar alarm call regarding the Greater St. Paul Missionary Baptist Church
in Fort Worth, Tarrant County, Texas.  He
testified that the church is in a residential area and that it did not appear
that it was in use by its congregation when he arrived.  Martin parked on the west end and then exited
his car to explore the building.  He
observed no signs of forced entry. 
Martin could see inside the building through the exterior glass door and
then through a window in the interior wooden door on the northeast side.  Martin saw a light on in the kitchen area,
which was on the southeast corner of the building.  In that area, about forty-five feet away from
his vantage point, Martin also saw a tall male putting a white plastic bag
inside a brown paper bag.  The man was
facing Martin.  The brown paper bag was
on the table.  Martin testified that it
appeared that the man was trying to take items. 
Martin walked around to the south side of the building, where he saw
light through an open window.  Martin
could not see anyone through the window, but he heard “rustling around
noises.”  Martin radioed for backup and
waited underneath the window for backup to arrive.  He forgot to turn his radio down until after
his radio made a “kind of loud” noise.

Martin’s
backup, Officer Fincher, arrived.  Martin
then saw the kitchen light go out.  He moved
to the east side of the building where there was an exterior door.  Martin heard what sounded like a lock being
unlatched, and then he saw the person he had seen putting the plastic bag into
the brown paper bag, Appellant, exit the building through that door.  The police had not announced their presence,
nor had they done anything to force Appellant out of the building.

Martin
was between eight and ten feet from Appellant when he left the building.  Martin testified that it had been pretty
dark.  Martin observed Appellant for
“[m]aybe thirty seconds” and did not see a small cut on Appellant’s neck.  Martin ordered Appellant to the ground.  Appellant did not have any property on his
person that had been removed from the church, nor did he have any weapons.  Officer Fincher came around the building and
took Appellant into custody.

Martin
then went into the kitchen area where he had seen the light on.  He saw the brown paper sack lying on the
floor behind the table.  He looked inside
it and found a white plastic bag.  Inside
the plastic bag, he saw two bags of potato chips and one large canister of
powdered lemonade.  He testified that the
white plastic bag and the brown paper bag were the same ones that he had seen
in Appellant’s hand a few minutes earlier.

Martin
testified that he noticed that the kitchen window was still open and also said that
the police searched throughout the church but found no other person, no damage,
and nothing else out of the ordinary. 

Reverend
Grady Anderson, senior pastor of the church, testified that the church was at
the eastern edge of the Poly neighborhood and the western edge of the Stop Six
neighborhood.  He recalled getting a call
from the church’s burglar alarm company on January 14, 2008, indicating that
zone four, which contains the sanctuary, had been breached.  Anderson called the police and then met them
at the church about twelve minutes later. 
By that time, the police had apprehended Appellant.

Anderson
testified that the church was not being used by its members on that early
Monday morning, that the security alarm had been activated, and that no one had
permission to be in the church at that time. 
He specifically testified that Appellant did not have permission to be
in the church.  Anderson also testified
that the purpose of the kitchen was to prepare food for the church’s “social
functions, for funerals, for vacation Bible school, or for Thanksgiving dinners
and other occasions like that.”  Anderson
further testified that the church ran a food bank on site.  Finally, he testified that church members and
outside donors paid for all the food.

The
evidence in the light most favorable to the verdict shows that after a burglar
alarm went off, Appellant was spotted holding food that was not his while
standing inside a building that he had no permission to be in.  Based on the appropriate standard of review,
we hold that the evidence is legally sufficient to support Appellant’s
conviction for burglary.  That is, we
hold that the evidence is legally sufficient to prove that Appellant “did then
and there intentionally, without the effective consent of Grady Anderson, the
owner thereof, enter a building not then and there open to the public with
intent to commit theft” and “did then and there intentionally or knowingly,
without the effective consent of Grady Anderson, the owner thereof, enter a
building and . . . attempt to commit . . . theft.”  We therefore overrule his first and second
issues and need not reach his third issue.[6]

Factual
Sufficiency of the Evidence

 

In
his fourth, fifth, and sixth issues, Appellant contends that the evidence is
factually insufficient to prove intent to commit theft, attempt to commit theft,
or a completed theft.  When reviewing the
factual sufficiency of the evidence to support a conviction, we view all the
evidence in a neutral light, favoring neither party.[7]  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s
determination is manifestly unjust.[8]  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, although legally sufficient, contradicts the
verdict.[9]  Unless we conclude that it is necessary to
correct manifest injustice, we must give due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@[10]  Evidence is always factually sufficient when
it preponderates in favor of the conviction.[11]  When reviewing a case comprised wholly of
circumstantial evidence, the standard of review is the same as it is for
reviewing cases in which direct evidence exists.[12]

Appellant
contends that Martin’s opinion that Appellant was trying to take items was a
conclusory assumption.  Yet Martin saw
Appellant putting the plastic bag in the paper sack and found the lemonade and
chips inside the plastic bag.  Appellant
also argues that any deduction that Appellant fled when he heard Martin’s
police radio through the open window is pure speculation.  Yet the jury is allowed to make reasonable
inferences.[13]  Applying the appropriate standard of review,
and deferring to the jury’s determinations of the facts, Aparticularly
those determinations concerning the weight and credibility of the evidence,@[14] we
cannot conclude that the jury’s determination of Appellant’s guilt is manifestly
unjust.  We overrule Appellant’s fourth
and fifth issues and do not reach his sixth issue.[15]

Hearing on Motion for New Trial

In
his seventh issue, Appellant contends that the trial court erred by refusing to
hold a hearing on his motion for new trial. 
We abated and remanded this case for a hearing on Appellant’s motion for
new trial, and we have reviewed the record of that hearing.  Appellant’s seventh issue is therefore
overruled as moot.

Conclusion

          Because we have overruled all of
Appellant’s seven issues, we affirm the trial court’s judgment.

 

 

                                                                             
 
 
 
 
 
 
 
 
 LEE ANN DAUPHINOT

                                                                             
 
 
 JUSTICE

 

PANEL: 
LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ. 

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: 
September
 30, 2010











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code Ann. § 30.02(a)(1), (3) (Vernon 2003)
(providing possible theories of burglary).





[3]Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State,
235 S.W.3d 772, 778 (Tex. Crim. App. 2007).





[4]Matson v. State, 819 S.W.2d 839,
846 (Tex. Crim. App. 1991).





[5]Tex.
Penal Code Ann. § 15.01(a)
(Vernon 2003). 





[6]See Tex. R. App. P. 47.1; Hooper v. State, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007) (“When the
trial court's charge authorizes the jury to convict on more than one theory, as
it did in this case, the verdict of guilt will be upheld if the evidence is
sufficient on any of the theories.”).





[7]Steadman v. State, 280 S.W.3d 242,
246 (Tex. Crim. App. 2009); Watson v. State, 204 S.W.3d 404, 414 (Tex.
Crim. App. 2006).  





[8]Steadman, 280 S.W.3d at
246; Watson, 204 S.W.3d at 414–15, 417.





[9]Watson, 204 S.W.3d at
417.





[10]Johnson v. State, 23 S.W.3d 1, 9
(Tex. Crim. App. 2000); see Steadman, 280 S.W.3d at 246.





[11]Steadman, 280 S.W.3d at
247; see Watson, 204 S.W.3d at 417.





[12]King v. State, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000).





[13]Park v. State, 8 S.W.3d 351, 352 (Tex.
App.—Amarillo 1999, no pet.).  





[14]Johnson, 23 S.W.3d at 9; see
Steadman, 280 S.W.3d at 246.





[15]See Tex. R. App. P. 47.1; Hooper, 214 S.W.3d at 14.